UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH CARTWRIGHT,

       Plaintiff,                            CIVIL ACTION NO. 14-cv-12548

       v.                                  DISTRICT JUDGE DAVID M. LAWSON

COMMISSIONER OF               MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

REPORT AND RECOMMENDATION

Plaintiff Kenneth Cartwright seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 20) and Defendant's Motion for Summary Judgment (docket no. 22). The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

I.     RECOMMENDATION

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 20) be DENIED and Defendant's Motion for Summary Judgment (docket no. 22) be GRANTED.

## II.     PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits with a protective filing date of January 26, 2012, alleging that he has been disabled since May 10, 2011, due to back and knee impairments and osteoporosis. (TR 111-12, 128, 131.) The Social Security Administration denied Plaintiff's claims on April 23, 2012, and Plaintiff requested a *de novo* hearing. (TR 55-64, 69-70.) On January 22, 2013, Plaintiff appeared with a representative and testified at the hearing before Administrative Law Judge (ALJ) Renita Barnett-Jefferson. (TR 30-54.) In a March 25, 2013 decision, the ALJ found that Plaintiff was not entitled to benefits because he was capable of performing his past relevant work as well as a significant number of jobs in the national economy. (TR 17-26.) The Appeals Council declined to review the ALJ's decision (TR 1-4), and Plaintiff commenced this action for judicial review. After some procedural abnormalities related to Plaintiff's prior counsel (*see* docket nos. 12-16; *see also* Administrative Order nos. 15-AO-033 and 15-AO-045), the parties filed the instant cross motions for summary judgment.

## III.    HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff does not set forth a statement of facts; instead, he incorporates factual allegations throughout his Motion for Summary Judgment. (*See* docket no. 20.) Defendant (docket no. 22 at 4-8), and the ALJ (TR 20-26) each set out a detailed, factual recitation with regard to Plaintiff's medical record and the hearing testimony. Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between the factual accounts and the record in this matter. Nevertheless, in light of Plaintiff's challenges to the ALJ's factual recitation, addressed herein, the undersigned declines to incorporate either Defendant's or the ALJ's factual recitations by

reference; instead, the undersigned will include comments and citations to the record as necessary throughout this Report and Recommendation.

## IV. ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 10, 2011, and that Plaintiff suffered from the following severe impairments: lumbar facet disc disease and spondylosis, history of left knee replacement, and osteoporosis. (TR 19.) Next, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 19-20.) The ALJ then found that Plaintiff had the following residual functional capacity (RFC):

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b): the claimant requires a sit/stand option and will need to change positions every 45 minutes to one hour. He is limited to occasional pulling of foot controls with the left lower extremity. He can occasionally climb ramps and stairs. He can never climb ladders, ropes or scaffolds. He can frequently balance, occasionally stooping, kneeling and crouching. He is unable to crawl. He is limited to frequent fingering. He should avoid concentrated exposure to unprotected heights, hazardous moving mechanical parts and vibration. He is limited to simple tasks.

(TR 20-24.) Subsequently, in reliance on the VE's testimony, the ALJ determined that Plaintiff was capable of performing his past relevant work as a courier and interviewer as well as a significant number of jobs in the national economy. (TR 24-26.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from May 10, 2011, through the date of the decision. (TR 17, 26.)

## V.     LAW AND ANALYSIS

### A.     Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.     Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)    Plaintiff was not presently engaged in substantial gainful employment; and

(2)    Plaintiff suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

**C.     Analysis**

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material

5

evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be remanded under sentence four because the ALJ's assessments of Plaintiff's credibility and RFC are not supported by substantial evidence.[1] (Docket no. 20 at 6-15.) Specifically, Plaintiff argues that the ALJ selectively cited to evidence that did not accurately depict Plaintiff's condition outside of some brief periods of improvement. (*Id*. at 6.) Plaintiff also argues that the ALJ "misstated evidence, or relied on nonexistent statements in the record to support a consistent campaign to denigrate Plaintiff's credibility and deny the severity of his impairments." (*Id*. at 6-7.) Plaintiff makes several secondary arguments in support of the arguments above, which, essentially, scrutinize various statements that the ALJ made in her decision. Defendant asserts that Plaintiff's brief "amounts to a vain attempt to parse the ALJ's decision and single out *de minimus* errors in the ALJ's RFC analysis" and while it "attempts to pick apart portions of the ALJ's analysis, it posits no evidence showing that [P]laintiff's impairments resulted in a more restrictive RFC finding." (Docket no. 22 at 10, 11.)

---

[1] Plaintiff also asserts that the ALJ erred at steps two and three of the sequential evaluation process by failing to find that his cervical disk disease was a severe impairment and by stating that Plaintiff did not have positive straight leg raise tests. (Docket no. 20 at 7.) Plaintiff further asserts that while these alleged errors do not form sufficient bases to challenge the ALJ's decision, they are characteristic of the ALJ's minimization of Plaintiff's impairments. (*Id*.) Plaintiff's assertions are noted, but need not be addressed any further.

6

Each of Plaintiff's secondary arguments, which Defendant appropriately separated into two categories, will be addressed in turn.

### 1. *The ALJ's Evaluation of Plaintiff's Activities of Daily Living*

Plaintiff challenges the ALJ's discussion of Plaintiff's ability to perform activities of daily living. (Docket no. 20 at 8-11.) Essentially, Plaintiff picks apart the ALJ's summation of Plaintiff's disability reports and function report, which provides:

> In the claimant's applications for benefits (2E) filed in February 2012, he alleges he is unable to work due to his back and knee impairments (2E/2). He reports that he became unable to work as of May 10, 2011 because of his medical conditions (2E/2). In an updated application filed in May 2012, the claimant reports a worsening medical condition, such as a worsening knee pain (5E/1), but which did not affect his ability to meet his personal care needs or change his activities of daily living (5E/3). The claimant reported only one personal care limitation, associated with bathing, but otherwise denied any limitations with dressing, shaving, feeding himself, using the toilet, or any other concerns (3E/2). In the claimant's Adult Function Report, the claimant reports a largely unhampered ability to perform his activities of daily living, with some allegations regarding standing limitations (3E), but is generally able to perform household chores, preparing meals, caring for his daughter, pets, going outside, driving a motor vehicle, mowing the lawn, doing laundry, shopping in stores, handling financial matters, watching television and spending time with his daughter (3E). The claimant reports limitations involving his ability to lift more than 15 pounds, squat, bend, stand, walk, sit, kneel, climb stairs, remember and concentrate, while denying any other impact on his functional abilities from his medical conditions (3E/6). The claimant reports the use [of] a back brace and alleged that narcotic pain medications cause him to have anxiety attacks, while denying any other medication side effects (3E/7-8).

(TR 20-21.)

First, Plaintiff takes issue with the ALJ's summary of Plaintiff's May 4, 2012 disability report that "[i]n an updated application filed in May 2012, the claimant reports a worsening medical condition, such as a worsening knee pain (5E/1), but which did not affect his ability to meet his personal care needs or change his activities of daily living (5E/3)." (Docket no. 20 at 8-

7

9 (citing TR 20).)  The questions and answers in Plaintiff's disability report that are relevant to this issue are:

> Date of Last Disability Report:  02/01/2012
>
> A.  Has there been any change (for better or worse) in your illnesses, injuries, or conditions since you last completed a disability report?  Yes
>
> If "YES," please describe in detail:  severe pain from osteoporosis; knees severe pain – several scopes and total knee but continued pain.
>
> Approximate date the change(s) occurred:  2011
>
> . . . .
>
> A.  How do your illnesses, injuries, or conditions affect your ability to care for your personal needs?  none
>
> B.  What changes have occurred in your daily activities since you last completed a disability report? (If none, show "None")  none

(TR 154, 156.)  Plaintiff claims that while he responded that there had been no change in his daily activities since he last completed a disability report, the ALJ represented in her decision that Plaintiff's impairment had <u>never</u> caused a change in his daily activities.  (Docket no. 20 at 9 (emphasis in original).)  Plaintiff's argument lacks merit; the ALJ's failure to articulate the time period related to Plaintiff's responses in her summary of Plaintiff's disability report does not render the summary inaccurate or a mischaracterization of Plaintiff's responses.  *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)) ("[I]t is well settled that '[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'").

Next, with regard to the ALJ's summary of Plaintiff's March 17, 2012 function report, Plaintiff seemingly asserts that the ALJ failed to consider Plaintiff's reported difficulty of

cleaning his lower extremities. (Docket no. 20 at 9 (citing TR 141).) Plaintiff is incorrect here. The ALJ explicitly noted that Plaintiff reported a limitation associated with bathing, and cited the same page of the record that Plaintiff cites. (TR 20-21 (citing TR 141).) Plaintiff also claims that the ALJ incorrectly stated that Plaintiff's daily activities included caring for his daughter. (Docket no. 20 at 10.) Plaintiff argues that he actually stated that his daughter helps him care for their pets. (*Id.* (citing TR 141).) Plaintiff is correct to the extent that in his function report, Plaintiff checked "no" in response to the question of whether he took care of anyone such as a spouse, children, or grandchildren; he checked "yes" in response to the question of whether he took care of pets or other animals; and he elaborated that his daughter helped him care for those pets. (*See* TR 141.) But later in his function report, Plaintiff stated that he took his daughter to school on a regular basis (TR 144); thus, the ALJ's statement that Plaintiff cared for his daughter is not necessarily inaccurate.

Also with regard to the ALJ's summary of Plaintiff's function report, Plaintiff argues that the ALJ's statement that Plaintiff's "largely unhampered ability to perform his activities of daily living" includes being "generally able to . . . prepare[] meals" is contrary to Plaintiff's own description of his ability to prepare meals. (Docket no. 20 at 10 (citing TR 21, 142).) In his function report, Plaintiff stated that he prepared his own meals on a daily basis. (TR 142.) He said that he prepared easy meals, not big meals, which took him between 10 and 80 minutes. (TR 142.) Plaintiff added that he was unable to stand at the counter for very long. (TR 142.) A comparison of Plaintiff's statements and the ALJ's characterization of the same reveals that there is no material inconsistency between the two accounts. Notably, Plaintiff does not further develop his argument regarding this feigned inconsistency. Plaintiff's argument fails here.

Plaintiff makes a similar argument with regard to the ALJ's statement that Plaintiff's "largely unhampered ability to perform his activities of daily living" includes being "generally able to perform household chores." (Docket no. 20 at 11.) Plaintiff argues that such a statement is inconsistent with Plaintiff's hearing testimony. (*Id.*) Plaintiff expounds that "[t]he specifics of Plaintiff's activities are less important than the demonstration of the ALJ's systematic attempts to minimize the severity of his limitations to denigrate the credibility of his testimony[.]" But, as discussed, the ALJ made the statement at issue in summarizing Plaintiff's function report, not his hearing testimony. To the extent that Plaintiff's function report is inconsistent with his hearing testimony, the ALJ was certainly justified in questioning Plaintiff's credibility.

The last argument that Plaintiff makes with regard to the ALJ's summary of Plaintiff's function report is related to the ALJ's statement that "[t]he claimant reports limitations involving his ability to lift more than 15 pounds, squat, bend, stand, walk, sit, kneel, climb stairs, remember and concentrate, while denying any other impact on his functional abilities from his medical conditions (3E/6)." (Docket no. 20 at 10-11 (citing TR 21).) In making this statement, the ALJ was summarizing Plaintiff's check-marked and written response to the question that asked Plaintiff to "[c]heck any of the following items that your illnesses, injuries, or conditions affect." (TR 145.) Evidently, the ALJ listed Plaintiff's reported limitations in accordance with the boxes checked by Plaintiff, and she stated that Plaintiff denied limitations with respect to the abilities associated with the unchecked boxes. Plaintiff claims that the cited list of limitations is comprehensive and work-preclusive, and that any denial by Plaintiff of an impact on his other functional limitations would be meaningless and unsupportive of the ALJ's denigration of Plaintiff's credibility. (Docket no. 20 at 10.) Plaintiff's argument here fails for two reasons. First, the ultimate issue of disability is reserved to the Commissioner, not to Plaintiff. *See Kidd*

10

*v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 341 (6th Cir. 2008). Second, the ALJ is entitled to consider all record evidence in his assessment of Plaintiff's credibility, especially where Plaintiff denies limitations with regard to his functional abilities. For the reasons discussed above, Plaintiff's Motion with regard to the ALJ's evaluation of Plaintiff's activities of daily living should be denied.

### 2. *The ALJ's Evaluation of the Medical Evidence*

Plaintiff also asserts several errors with regard to the ALJ's discussion of the medical evidence. For example, Plaintiff argues that the ALJ's statement in her step-three analysis that "there is insufficient evidence showing on-going compromise of a nerve root or spine [sic] cord, along with evidence of nerve root compression, motor, sensory or reflex loss or positive straight leg raises" contradicts a statement she made in her assessment of Plaintiff's RFC that "[t]he medical evidence of record shows . . . diagnoses for chronic low back pain, bilateral lower extremity pain secondary to lumbar disc herniation, an extruded herniation and spondylosis." (Docket no. 20 at 8 (quoting TR 20, 21).) Plaintiff adds that the ALJ's second statement is a direct quote from an examination report generated by Dr. Diane Czuk-Smith, M.D., and he argues that the ALJ did not quote the entire diagnosis paragraph, omitting diagnoses of associated concordant discogenic pain and bilateral lumbar facet syndrome. (*Id*. (citing TR 206).) The ALJ's two statements at issue, however, do not appear to be contradictory on their face, and Plaintiff does not explain where the contradiction or error lies. Also, Plaintiff's argument that the ALJ erred by not articulating in her decision every diagnosis assessed by Dr. Czuk-Smith fails; again, it is axiomatic that an ALJ need not discuss every piece of evidence in the record. *See Kornecky, supra*. It is evident that the ALJ considered Dr. Czuk-Smith's

11

examination report, which is all that the regulations require. Plaintiff does not sufficiently assert error with regard to this issue.

Next, Plaintiff takes issue with the following statement in the ALJ's decision:

Persuasively, in June 2011, shortly after the claimant's alleged onset date, I note evidence showing the claimant reported only minimal back symptoms; in addition, he denied experiencing any radiculopathy (1F/2). Compelling, on June 14, 2011, the claimant denied experiencing any low back pain (2F/28).

(Docket no. 20 at 11-12 (citing TR 21).) Plaintiff admits that the ALJ's statements are correct, but he asserts that they provide no basis to question Plaintiff's credibility. Plaintiff argues that, conversely, these statements show that "the ALJ was 'persuaded' and 'compelled' to seize on any facially negative finding, regardless of its accuracy or its relevance to Plaintiff's condition beyond the first month of the two[]years under adjudication." (*Id*. at 12.) This is a very bold accusation, and it is completely without merit. The ALJ properly relied on the evidence cited in the statements above in assessing credibility, as it is relevant to the severity of Plaintiff's condition during the alleged disability period.

Similarly, the ALJ properly relied on medical records submitted by one of Plaintiff's treating physicians, Jonathan René, M.D. (*See* TR 173-77.) Plaintiff argues that the ALJ should not have relied upon those records with regard to Plaintiff's back pain because Dr. René's treatment notes indicate that he was treating Plaintiff only for osteoporosis. (Docket no. 20 at 12.) Nevertheless, Plaintiff discussed his "minimal back symptoms" with Dr. René, who encouraged Plaintiff to continue his weight-loss program and to perform isometric abdominal strengthening exercises. (TR 174.) Plaintiff does not assert that Dr. René was unqualified to make these recommendations, and it was not inappropriate for the ALJ to acknowledge Plaintiff's reported back symptoms or consider Dr. René's recommendations in her decision.

12

Next, Plaintiff argues that the ALJ erred by stating that "[w]hile [back surgery] had been recommended, the medical evidence of record shows this was not necessary as the claimant achieved relief from more conservative forms of treatment (2F)."  (Docket no. 20 at 12-13.)  Plaintiff argues that the ALJ cited no evidence to support her statement that the surgery was "not necessary;" instead, she substituted her opinion for that of the medical doctors.  (*Id*. at 12.)  Plaintiff also cites to evidence that shows that he declined surgery because he had concerns regarding his osteoporosis and any surgery-related hardware, and he argues that it was unreasonable for the ALJ to question the severity of his back impairment on the basis of his reluctance to undergo surgery.  (*Id*. at 12-13 (citing TR 197).)  But a plain reading of the ALJ's statement shows that the ALJ did not minimize the severity of Plaintiff's back impairment on that basis.  Nevertheless, Plaintiff is correct in his assertion that there is no evidence explicitly stating that surgery was not necessary; apparently, the ALJ reached such a conclusion from her review and evaluation of the evidence from the Matrix Pain Management clinic, which revealed that by December of 2011, Plaintiff was reporting a ninety percent improvement in his back and lower extremity pain as a result of physical therapy and spinal injections.  (*See* TR 188-89.)  To the extent that the ALJ erred in making such a finding in the absence of explicit medical opinion evidence, such an error does not warrant remand because the ALJ's finding on this matter was not dispositive of her disability determination – it was just one in several otherwise sound reasons for her determination.

Finally, Plaintiff argues that the ALJ provided a "selective and counterfactual description of Plaintiff's medical care" rendered by Drs. Paul LaClair, M.D. and Czuk-Smith in her decision.  (Docket no. 20 at 13-14.)  Specifically, Plaintiff argues that the ALJ correctly cited evidence of Plaintiff's "intermittent and brief" improvements in his back condition and in the pain related to

13

his back condition, but the ALJ failed to mention and/or ignored the ineffective pain-relieving procedures administered prior to Plaintiff's December 2011 improvement as well as the evidence of his continued back pain generated in late 2012.  (*Id*.)  To the extent that Plaintiff argues that the ALJ should have explicitly discussed the exact same evidence that Plaintiff cites in his brief, his argument fails under *Kornecky*.  Moreover, the ALJ both generally and specifically cited to Dr. LaClair's and Dr. Czuk-Smith's treatment notes throughout her decision, including those related to Plaintiff's continued treatment at the end of 2012.  Here, the ALJ set forth a detailed review of Plaintiff's medical record in assessing Plaintiff's credibility and formulating Plaintiff's RFC.  And while the ALJ may not have addressed every piece of evidence in her written decision, there is nothing to suggest that the ALJ did not consider the entire record.  Accordingly, Plaintiff's Motion should be denied in this regard.

### 3. *The ALJ's Decision is Supported by Substantial Evidence*

The ALJ considered the evidence at length and concluded that Plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms.  Once this finding was made, the ALJ was required to evaluate the evidence as a whole, including Plaintiff's own statements about his pain or other symptoms, and consider the extent to which the intensity and persistence of the symptoms could limit his ability to work.  20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).  Whenever the evidence as a whole fails to support a claimant's statements about the intensity, persistence, or limiting effects of his pain or symptoms, the ALJ is required to make a finding on the claimant's credibility.  Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996).  "[A]n ALJ's findings based on the credibility of [a claimant] are to be accorded great weight and deference."  *Walters v. Comm'r*, 127 F.3d at 531.

Here, the ALJ provided an accurate summary of Plaintiff's subjective complaints regarding the effect of his pain and other symptoms on his ability to work. The ALJ then considered Plaintiff's complaints in conjunction with the medical evidence, and she found that the evidence reduced the credibility of Plaintiff's allegations. (TR 21.) In so finding, the ALJ noted Plaintiff's minimal back symptoms, relief from spinal injections that lasted for almost a year, reports of walking nearly five miles in an hour and shopping for eight hours in one day with little pain, ability to mow the lawn, and ability to travel to Pennsylvania in a motor vehicle. (TR 21-22.) The ALJ also noted that Plaintiff achieved pain relief through conservative treatment, such as physical therapy, ice, changing positions, and the use of a brace. (TR 22.) Additionally, the ALJ reasoned that Plaintiff's fluctuating work and earnings history negatively affected Plaintiff's credibility, especially where he reported higher earnings in the year in which he alleged disability than in previous years. (TR 23-24.) And perhaps most importantly, the ALJ highlighted the fact that none of Plaintiff's treating physicians issued opinions that assess Plaintiff's ability to perform work-related functions or that indicate the existence of functional limitations resulting from Plaintiff's impairments, and she found that the lack of opinion evidence negatively reflected on Plaintiff's credibility. (TR 23, 24.) The ALJ ultimately found that Plaintiff's testimony and his other subjective complaints were not entirely credible. (TR 21.)

An ALJ "may find all, only some, or none of an individual's allegations to be credible" and may also find the statements credible to a certain degree so long as the ALJ properly sets forth the basis for determining Plaintiff's credibility. SSR 96–7p. Here, the ALJ found that Plaintiff's statements were not entirely credible, and the undersigned can find no fault in the ALJ's analysis of Plaintiff's subjective complaints. Moreover, the ALJ appears to have properly evaluated the medical evidence of record. The undersigned has found no reason to suggest that

the ALJ's RFC finding is not supported by substantial evidence.  Furthermore, the ALJ presented all of the limitations of the RFC in her hypothetical questions to the VE, and the VE testified that there are jobs available for a person with these limitations.  (TR 50-52.)  Plaintiff has not challenged the reliability of the VE's testimony or given any other reason to discount the ALJ's reliance on the VE's testimony regarding Plaintiff's ability to perform his past relevant work as well as a significant number of jobs in the national economy.  Therefore, the ALJ's decision is supported by substantial evidence.

## VI.    CONCLUSION

For the reasons stated herein, the Court should DENY Plaintiff's Motion for Summary Judgment (docket no. 20) and GRANT Defendant's Motion for Summary Judgment (docket no. 22).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).

Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: March 30, 2016        s/ Mona K. Majzoub
                             MONA K. MAJZOUB
                             UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: March 30, 2016        s/ Lisa C. Bartlett
                             Case Manager